IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DIANE E. LOSENICKY,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0064

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    PRINCIPLES OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
        A.    Losenicky's Education and Employment Background  . . . . . . . . . . .  4
        B.    Administrative Hearing Testimony  . . . . . . . . . . . . . . . . . . . . . .  4
              1.    Losenicky's Testimony . . . . . . . . . . . . . . . . . . . . . . . .  4
              2.    Vocational Expert's Testimony  . . . . . . . . . . . . . . . . . . .  5
        C.    Losenicky's Medical History  . . . . . . . . . . . . . . . . . . . . . . . .  6

V.      CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
        A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . .  9
        B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . .  11
              1.    Dr. Brooks' Opinions  . . . . . . . . . . . . . . . . . . . . . . . .  11
              2.    Credibility Determination  . . . . . . . . . . . . . . . . . . . . . .  14

VI.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

VII.    ORDER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Diane E. Losenicky on June 24, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Losenicky asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Losenicky requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 24, 2013, Losenicky filed this action for judicial review. The Commissioner filed an Answer on October 29, 2013. On December 2, 2013, Losenicky filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing her past relevant work as a telephone solicitor. On January 28, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On February 10, 2014, Losenicky filed a reply brief. On September 11, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a

different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Losenicky's Education and Employment Background

Losenicky was born in 1953. She completed the twelfth grade. Over the past 15 years, Losenicky has worked as a telephone solicitor, sales clerk, and retail manager. She has not worked since 2011.[1]

### B. Administrative Hearing Testimony

#### 1. Losenicky's Testimony

At the administrative hearing, Losenicky's attorney asked Losenicky what caused her to stop working. Losenicky responded that she stopped working due to back problems. She stated that her back was "so bad" that she was unable to perform her job stocking shelves or working a cash register. Losenicky testified that the only way to possibly fix her back would be to have surgery. She did not want to have surgery, however, because she had heard stories that the type of surgery she needed did not always fix the problem,

---

[1] *See* Administrative Record at 34 (testimony from Losenicky at the administrative hearing regarding not working since 2011).

and sometimes made it worse. Losenicky's attorney inquired about how her back problems placed limitations on her functional abilities:

> Q: So, how are you limited with your back?
> A: Just simple things like everyday housework you know. What used to take me a couple hours now can take me up to three days to do. Vacuuming is one of those things that's just almost impossible. Sweeping. We make chicken pot pie for Thanksgiving dinner, and I rolled out the dough. Well, then I winded up in bed just from rolling the dough.
> Q: Standing up?
> A: Standing up, rolling that, yes. That just you know -- and even lifting can wind up pulling into your back you know, and then with the arthritis you know in my body, I've had flares in every joint that you can have flares in with rheumatoid arthritis, and that prevents you from doing things. You're stiff. You know you ache all over. . . .

(Administrative Record at 36.) Losenicky also testified that her pain causes her to become easily fatigued and lack stamina. She stated that on a bad day, her back pain can rate at an 8 or 9 on a 10-point scale, with 10 being the greatest amount of pain. Lastly, Losenicky's attorney inquired what she believed was her "biggest impediment" to working a full-time job. Losenicky answered that pain in her knees, back, shoulders, wrists, and hands kept her from being able to work full-time.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma A. Mitchell with a hypothetical for an individual who could:

> occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. This individual could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.

She could occasionally climb ramps and stairs. Never climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch and crawl. She could do frequent handling and fingering. She would need to avoid concentrated exposure to hazards such as heights and machinery.

(Administrative Record at 54.) The vocational expert testified that under such limitations, Losenicky could return to her past relevant work as a telephone solicitor or sales clerk.

Losenicky's attorney also questioned the vocational expert. Losenicky's attorney and the vocational expert engaged in the following colloquy:

> Q: If the hypothetical person were limited to using their hands only ten percent of the workday, would they be employable?
>
> A: No, they would not be able to sustain full-time, competitive employment.
>
> Q: If the hypothetical person took unscheduled breaks, two to three times in an eight-hour shift, in addition to regular work breaks, and the unscheduled ones were 20 to 30 minutes each, would an employer allow for that much?
>
> A: No. I don't feel that would be tolerated. The person couldn't sustain those jobs or any jobs on a full-time, competitive basis.
>
> Q: And if the hypothetical person were going to miss more than three days per month, would they be competitively employable?
>
> A: No.

(Administrative Record at 55-56.)

### C. Losenicky's Medical History

On July 16, 2010, Losenicky was referred to Dr. Chad D. Abernathey, M.D., for consultation on her back pain. Losenicky reported a history of low back pain with radiation into her left leg. Losenicky complained of pain, numbness, and tingling in her low back and leg. Dr. Abernathey noted that to date, Losenicky had undergone conservative treatment for her back and leg pain. Based on MRI findings, Dr. Abernathey

diagnosed Losenicky with L5-S1 synovial cyst formation on the lumbosacral spine. Dr. Abernathey recommended surgery as treatment, but Losenicky declined surgical intervention.

On March 5, 2011, Dr. Mary Greenfield, M.D., reviewed Losenicky's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Losenicky. Dr. Greenfield determined that Losenicky could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield also determined that Losenicky could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Dr. Greenfield limited Losenicky to frequent handling and fingering bilaterally. Lastly, Dr. Greenfield found that Losenicky should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and hazards such as machinery and heights. Dr. Greenfield found no visual or communicative limitations.

On April 26, 2011, at the request of Losenicky's attorney, Dr. Michael Brooks, M.D., filled out an "Arthritis Residual Functional Capacity Questionnaire" for Losenicky. Dr. Brooks noted that he had been treating Losenicky since 1999. Dr. Brooks diagnosed Losenicky with rheumatoid arthritis, osteoarthritis, obstructive sleep apnea, diabetes, and depression. Dr. Brooks opined that Losenicky's prognosis was "guarded." Dr. Brooks further opined that Losenicky's pain in her hands, knees, and feet became worse with activity. Dr. Brooks determined that Losenicky could: (1) rarely lift 10 pounds; (2) occasionally lift less than 10 pounds; (3) rarely twist, stoop, or climb stairs; (4) never crouch or climb ladders; (5) walk 2 blocks without rest or severe pain; (6) sit for at least 6 hours in an 8-hour workday, but need to change positions every hour; and (7) stand for about 2 hours in an 8-hour workday. Dr. Brooks also determined that Losenicky would

7

be limited in using her hands, fingers, and arms to 10% of the time in an 8-hour workday. Dr. Brooks noted that Losenicky "often" experienced pain severe enough to interfere with her attention and concentration. Dr. Brooks opined that Losenicky was capable of low stress jobs. Lastly, Dr. Brooks indicated that Losenicky would miss approximately one day per month due to her impairments or treatment for her impairments.

On July 6, 2011, Losenicky was referred by DDS to Dr. Roger E. Mraz, Ph.D., for a psychological evaluation. Losenicky reported to Dr. Mraz that her physical problems had been "getting her down" and causing her depression for the past two years. Upon examination, Dr. Mraz found that Losenicky's "[w]orking memory skills were excellent, indicating that she can focus her attention, concentrate, and hold information in memory long enough to carry out mental operations. She had no difficulty remembering and carrying out simple instructions at a reasonable pace."[2] Dr. Mraz found that on the Beck Depression Inventory-II test, Losenicky endorsed "significant" symptoms of depression. Dr. Mraz noted that Losenicky:

> feels like a worthless failure and is sad or depressed much of the time. She sleeps a great deal, but lacks the energy or motivation to do much of anything. . . . She gets less pleasure out of life than she used to and is discouraged about her future.

(Administrative Record at 373.) Dr. Mraz diagnosed Losenicky with adjustment disorder with a depressed mood. Dr. Mraz concluded that Losenicky "should have no difficulty remembering and carrying out instructions at a reasonable pace."[3]

On July 11, 2011, Dr. Myrna Tashner, Ed.D., reviewed Losenicky's medical records and provided DDS with a Psychiatric Review Technique assessment for Losenicky. Dr. Tashner diagnosed Losenicky with adjustment disorder with depressed mood. Dr. Tashner determined that Losenicky had the following limitations: no restriction of

---

[2] Administrative Record at 373.

[3] *Id.*

activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Tashner concluded that:

> [Losenicky] did not present with any evidence of a thought disorder or perceptual abnormalities. She was oriented and memory skills were adequate. She is capable of remembering and carrying out instructions at a reasonable pace. . . . The evidence in file does not show a severe mental impairment that would prevent her from working.

(Administrative Record at 386.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Losenicky is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Losenicky had not engaged in substantial gainful activity since January 7, 2011. At the second step, the ALJ

concluded from the medical evidence that Losenicky has the following severe impairments: obesity, lumbar radiculopathy, rheumatoid arthritis, hypothyroidism, and diabetes. At the third step, the ALJ found that Losenicky did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Losenicky's RFC as follows:

> [Losenicky] has the residual functional capacity to perform sedentary work . . . except she could only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. She could do frequent handling and fingering. She would need to avoid concentrated exposure to hazards such as heights or moving machinery.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Losenicky was functionally capable of performing her past relevant work as a telephone solicitor. Therefore, the ALJ concluded that Losenicky was not disabled.

### B. Objections Raised By Claimant

Losenicky argues that the ALJ erred in two respects. First, Losenicky argues that the ALJ failed to properly evaluate the opinions of Dr. Brooks, her treating physician. Second, Losenicky argues that the ALJ failed to properly consider her subjective allegations of pain and disability.

### 1. Dr. Brooks' Opinions

Losenicky argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Brooks. Specifically, Losenicky argues that the ALJ's reasons for discounting Dr. Brooks' opinions are not supported by substantial evidence in the record. Losenicky concludes that this matter should be remanded for further consideration of Dr. Brooks' opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v.*

*Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve

12

conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ thoroughly reviewed and set forth the opinions expressed by Dr. Brooks in the arthritis RFC questionnaire he filled out for Losenicky's attorney.[4] In considering Dr. Brooks' opinions, the ALJ concluded that:

> The undersigned has afforded the opinions of Dr. Brooks little weight because the opinions are completely inconsistent with the doctor's own treatment records. More specifically, as discussed above, Dr. Brooks indicated that [Losenicky's] rheumatoid arthritis symptoms were well controlled on medications. Even while being noncompliant with her recommended treatment regiment, Dr. Brooks reported that she was doing "reasonably well" with medications, with minimal physical examination findings. Contrary to the stated opinions above, Dr. Brooks reported that [Losenicky] was doing well regarding her arthritis and acknowledged that she felt her symptoms were under good control. Because of these inconsistencies, the undersigned affords the opinions little weight.

(Administrative Record at 20.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Brooks. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Brooks' opinions. *See* 20 C.F.R.

---

[4] *See* Administrative Record at 20.

§ 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2.  Credibility Determination

Losenicky argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Losenicky maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Losenicky's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may

not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

The ALJ addressed Losenicky's subjective allegations of pain and disability as follows:

> [Losenicky] experiences some symptoms and limitations; however, the record does not fully support the severity of [her] allegations. As discussed in full detail above, the objective medical findings of record failed to support [Losenicky's] allegations of disabling symptoms and limitations. Review of the medical evidence of record revealed that [Losenicky] has

consistently been noncompliant with treatment recommendations. More specifically, while reporting back pain with radicular symptoms, she refused surgical treatment for removal of a cyst on the spine that was recommended by her neurosurgeon. In addition, Dr. Sheeley continually remarked that [Losenicky] was noncompliant with testing blood sugars, following her diabetic diet, and exercising as recommended. Furthermore, Dr. Brooks noted that [Losenicky] stopped her arthritis medications and failed to follow-up for laboratory testing which resulted in her going off Methotrexate treatment for arthritis. Moreover, inconsistent with her allegations, [Losenicky] reported, 'getting out,' participating in church programming, and caring for her [] two-year-old grandson. Despite her noncompliance, treatment notes failed to indicate any complications from her diabetes, and noted that her hypertension and hyperthyroidism were stable on medications. Additionally, medical records indicated that [Losenicky] generally reported that her arthritis symptoms were doing well and feeling that they were controlled while remaining compliant with prescribed medications. Moreover, contrary to her testimony regarding ongoing depression, treatment notes indicated that [her] symptoms were controlled on medications, with normal mental status findings throughout the medical record. . . .

In sum, the above residual functional capacity assessment is supported by objective medical evidence contained in the record. Treatment notes in the record do not sustain [Losenicky's] allegations of disabling symptoms. . . . [Losenicky] does experience some symptoms and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 21-22.)

In her decision, the ALJ properly set forth and applied the law for determining a claimant's credibility.[5] Moreover, it is clear from the ALJ's decision that she thoroughly considered and discussed Losenicky's treatment history, medical history, functional restrictions, activities of daily living, and use of medications in making her credibility determination.[6] Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Losenicky's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Losenicky's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Brooks. The Court also finds that the ALJ properly determined Losenicky's credibility with regard to her subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

---

[5] *See* Administrative Record at 21-22.

[6] *See* Administrative Record at 21-22.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this _12th_ day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA